# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JAMES C. HULCE, individually and on behalf of a class of all persons and entities similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> ZIPONGO, INC. DBA FOODSMART, <br><br> Defendants. | Case No. |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1. Plaintiff James C. Hulce ("Plaintiff" or "Mr. Hulce") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs.*, *LLC,* 132 S. Ct. 740, 745 (2012).

2. In violation of the TCPA, Zipongo, Inc. d/b/a Foodsmart ("Foodsmart" or "Defendant") initiated telemarketing calls to Mr. Hulce and other putative class members without their prior express written consent despite their numbers being listed on the National Do Not Call Registry.

3. Also in violation of the TCPA, Foodsmart failed to maintain adequate procedures to maintain an internal do not call list.

4. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of

proposed nationwide classes of other persons who received illegal telemarketing calls from or on behalf of the Defendant.

5. A class action is the best means of obtaining redress for the Defendant's wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

6. Plaintiff James C. Hulce is a resident of the state of Wisconsin and this District.

7. Defendant Zipongo Inc. d/b/a Foodsmart is a Delaware corporation with its principal place of business in California.

**Jurisdiction & Venue**

8. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District as the telemarketing calls that gave rise to the Plaintiff's claims occurred here.

**The Telephone Consumer Protection Act**

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do Not Call Registry

11. The National Do Not Call Registry (the "Registry") allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

12. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

13. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

The TCPA's Internal Do Not Call List Requirements

14. The TCPA implementing regulations prohibit any company from initiating any telemarketing call unless the company has implemented internal procedures for maintaining a list of persons who request not to be called by the entity. 47 C.F.R. 64.1200(d). Such internal procedures must meet certain minimum requirements to allow the entity to initiate telemarketing calls. 47 C.F.R. 64.1200(d)(1)-(6).

15. This includes the requirements that:

- "Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list" (47 C.F.R. 64.1200(d)(1));

- "Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list" (47 C.F.R. 64.1200(d)(2));

- Persons or entities making telemarketing calls must honor do-not-call requests within a reasonable time, not to exceed thirty days, from the date such request is made (47 C.F.R. 64.1200(d)(3));

- "A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made." (47 C.F.R. 64.1200(d)(6)).

16. These policies and procedures prohibit a company from making telemarketing calls unless they have implemented these policies and procedures. 47 C.F.R. § 64.1200(d).

17. Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

18. Pursuant to 47 C.F.R. 64.1200(e), the rules set forth above in 47 C.F.R. 64.1200(d) are "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers…."

## Factual Allegations

19. Foodsmart is a nutrition coaching service.

20. Foodsmart uses telemarketing to promote its nutrition coaching service, including voice calls and text messages soliciting the recipients to sign up for the service.

Calls to Mr. Hulce

21. Mr. Hulce is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

22. Mr. Hulce's residential telephone number, (262) 293-XXXX, is registered on the National Do Not Call Registry.

23. Plaintiff received healthcare coverage from Chorus Community Health Plans ("CCHP") from 2021 through November 30, 2022.

24. Foodsmart partners with health plans such as CCHP to offer Foodsmart's services to the plan's members.

25. During the period of time Plaintiff received healthcare coverage from CCHP, he repeatedly received voice calls, text messages, postal mail, and e-mails soliciting him to sign up for Foodsmart's service.

26. Plaintiff expressed clear disinterest by repeatedly requesting to be removed from any marketing/calling lists.

27. Foodsmart failed to honor his requests, and Plaintiff continued to receive voice calls and text messages promoting Foodsmart's service.

28. As an example of the text messages Plaintiff received, on October 27, 2022, Plaintiff received the following text message despite having made requests to be removed from any marketing/calling lists in the summer of 2022:

> October is the month of sweet treats & pumpkin spice everything. Make meeting with a personal dietitian part of your Fall routine & balance your blood sugar 🎃
>
> Bundle Up! Get a $25 gift card when you complete a no cost visit in Oct., and $25 for taking the Foodsmart Nutriquiz!
> https://fdsmt.co/3NdUw1V 🎃
> Reply stop to unsubscribe.
>
> (414) 246-0371 • Oct 27, 2022

29. On November 10, 2022, Plaintiff sent CCHP a formal grievance letter regarding the calls.

30. In response, CCHP explained that CCHP and Foodsmart divided responsibility for Foodsmart's "marketing outreach," with Foodsmart completing the text messaging and email portion of the marketing outreach and CCHP completing the voice call and mailing portion.

31. CCHP further acknowledged Plaintiff's do not call requests and explained that Foodsmart failed to route them to CCHP, but assured Plaintiff the calls would cease.

32. Due to an unrelated matter, Plaintiff's healthcare coverage with CCHP ended on November 30, 2022.

33. Despite the termination of this relationship, in January 2023, Mr. Hulce received four more calls from Foodsmart and CCHP with voicemails being left on each occasion.

34. The calls came from the caller IDs (715) 643-8079 or (715) 364-5026.

35. The calls stated that the caller was calling "on behalf of [CCHP] and Foodsmart."

36. One voicemail left on January 3, 2023 stated the call was "to let you know about an exciting promotion. Members who meet with the nutrition coach paid for by your health plan

will be entered to win a $100 Walmart gift card. This is on top of the guaranteed $25 grocery gift card you can receive for completing your first appointment. Please call us back at (877) 526-0894 as soon as possible so we can get you scheduled."

37. Another voicemail left on January 4, 2023 used nearly identical language.

38. Another voicemail left on January 4, 2023 stated the call was "to let you know about a giveaway we [CCHP and Foodsmart] are currently running as part of your CCHP membership. You could be entered to win $100 by participating in the zero cost telehealth visit and completing a nutritional assessment. Please call us back at (414) 966-4599 as soon as possible so we can get you entered into the giveaway."

39. Plaintiff and all other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because their phone line was tied up during the telemarketing calls, and their privacy was improperly invaded. Moreover, these calls injured Plaintiff and other call recipients because they were frustrating, obnoxious, annoying, were a nuisance, and disturbed the solitude of Plaintiff and the class.

**Foodsmart's Vicarious Liability for Voice Calls**

40. For more than twenty years, the Federal Communication Commission ("FCC") has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995).

41. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re Joint Petition Filed by*

*DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, ¶ 1 (2013) ("May 2013 FCC Ruling").

42. In that ruling, the FCC instructed that sellers such as CCHP may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*Id.* at 6588, ¶ 37 (internal citations omitted).

43. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed

> to take effective steps within its power to force the telemarketer to cease that conduct.

*Id*. at 6592, ¶ 46.

44. By instructing its agents, such as CCHP, to complete the voice telemarketing portion of Foodsmart's marketing outreach, Foodsmart "manifest[ed] assent to another person … that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

45. Foodsmart instructed its agents to specifically state that the calls were on behalf of Foodsmart.

46. Foodsmart dictated the content of and wrote or approved the telemarketing scripts for the calls.

47. Foodsmart's agents such as CCHP were able to enter consumer information into Foodsmart's systems.

48. Foodsmart was made aware that its agents such as CCHP were violating the TCPA's Do Not Call Provisions and failed to take reasonable steps within its control to cease the conduct.

49. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

## Class Action Allegations

50. As authorized by Rule 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

51. The class of persons Plaintiff proposes to represent is tentatively defined as:

> **National Do Not Call Registry Class**: All persons in the United States (1) whose telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Foodsmart (3) within a 12-month period, (4) from four years prior the filing of the Complaint.
>
> **Do Not Call Class**: All persons in the United States whose, (1) telephone numbers have previously been provided to Foodsmart or its agents in connection with a request to no longer be called (2) but received at least two telephone solicitations from or on behalf of Foodsmart in a twelve month period (3) promoting Foodsmart (4) including at least one telephone solicitation from or on behalf of Foodsmart more than 30 days after requesting to no longer be called (5) from four years prior to the filing of the Complaint.

These are referred to as the "Classes."

52. Excluded from the Classes are counsel, the Defendant and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

53. The Classes as defined above are identifiable through phone records and phone number databases.

54. The Plaintiff is a member of the Classes.

55. There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following;

a. Whether Defendant violated the TCPA by failing to implement adequate procedures to with respect to an internal do-not-call list;

b. Whether Defendant placed calls without obtaining the recipients' prior express invitation or permission for the call;

c. Whether Defendant is vicariously liable for calls placed by its agents;

d. Whether multiple telemarketing calls were made promoting Defendant's goods or services to members of the Classes;

e. Whether Defendant's TCPA violations were negligent, willful, or knowing;

f. Whether the Plaintiff and the class members are entitled to statutory damages as a result of Defendant's actions.

56. Plaintiff's claims are based on the same facts and legal theories as class members, and therefore are typical of the claims of class members.

57. Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the classes, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

58. The actions of the Defendant are generally applicable to the classes as a whole and to Plaintiff.

59. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

60. Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds in each of the Classes.

61. The joinder of all class members is impracticable due to the size and relatively modest value of each individual claim.

62. The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

63. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## FIRST CAUSE OF ACTION
### Violation of the Telephone Consumer Protection Act
### (47 U.S.C. 227(c)(5), et seq. and 47 C.F.R. § 64.1200(c))
### on behalf of the National Do Not Call Registry Class and the Do Not Call Class

64. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

65. Defendant Foodsmart violated the TCPA and the Regulations by itself placing as well as having its agent place two or more telemarketing calls within a 12-month period to Plaintiff and the members of the National Do Not Call Registry Class while those persons' phone numbers were registered on the National Do Not Call Registry.

66. Defendant Foodsmart also violated the TCPA and the Regulations by having its agent place two or more telemarketing calls within a 12-month period to Plaintiff and the members of the Do Not Call Class after those individuals had provided their phone number with an instruction to no longer receive calls from Foodsmart.

67. As a result of Foodsmart's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and National Do Not Call Registry Class members and Do Not Call Class members are each entitled

to an award of up to $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(c)(5).

68. Plaintiff and National Do Not Call Registry Class members and Do Not Call Class members are each entitled to an award of treble damages if Foodsmart's actions are found to have been knowing or willful.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. As a result of Defendant's negligent, willful and/or knowing violations of 47 U.S.C. 227(c)(5) et seq. and 47 C.F.R. § 64.1200(c), Plaintiff seeks for herself and each member of the Classes treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA;

B. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

C. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Respectfully submitted,

**/s/ *Anthony I. Paronich***
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: 508.221.1510
E-mail: anthony@paronichlaw.com

Brian K. Murphy, *subject to pro hac vice*
Jonathan P. Misny, *subject to pro hac vice*
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: murphy@mmmb.com
misny@mmmb.com

*Counsel for Plaintiff*