UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

JAMES HULCE, et al.,

   Plaintiff,

v.

ZIPONGO, INC. d/b/a FOODSMART,

   Defendant.

Case No. 2:23-cv-00159-LA

# FOODSMART'S RESPONE TO PLAINITFF'S PROPOSED FINDINGS OF FACT IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

1

Defendant Zipongo, Inc. d/b/a Foodsmart ("Foodsmart") hereby submits the following response to Plaintiff's Proposed Findings of Fact in Opposition to Foodsmart's Motion for Summary Judgment.

1. Foodsmart entered into a Master Services Agreement with CCHP on February 11, 2021 to provide its services to members of CCHP. (Scharen Dep., Ex. 3, § 2.1.)

**RESPONSE:**

Undisputed.

2. Foodsmart and CCHP agreed in a section of their Agreement titled "**MARKETING**" that there would be "**Marketing Team Collaboration**," to include a "launch and ongoing enrollment and activation strategy." (Scharen Dep., Ex. 3, § 6.2) "Marketing materials" referred to in the contract included scripts for outbound calls and the content of text messages. (*Id.*, 31:3-13.)

**RESPONSE:**

Undisputed.

3. The Foodsmart Service Order accompanying the Master Services Agreement further set forth "**Implementation and Marketing Requirements**" that included an "enrollment launch campaign" that included mobile SMS and requirements to promote Foodsmart. (Scharen Dep., Ex. 4.)

**RESPONSE:**

Undisputed.

4. To generate new business, Foodsmart engages in aggressive multi-channel marketing campaigns which include outbound calls and text messages along with other promotional materials such as flyers, emails, and postal mailings. (Hulce Dep., 44:17-25.)

**RESPONSE:**

Foodsmart doesn't dispute that it provides information regarding its products and services to CCHP subscribers through multiple mediums, including outbound calls, text messages, flyers, emails, and postal mailings. Foodsmart disputes Plaintiff's self-serving characterization of those communications as "aggressive multi-channel marketing campaigns" or that their sole purpose is to generate new business. (Scharen Decl. at 32).

5. Between 2021 and 2022, Plaintiff received approximately 20 calls from callers calling on behalf of Foodsmart. (Hulce Dep., Ex. 2, Interrogatory No. 2.) These included calls on May 17, 2022, June 4, 2022, June 7, 2022, December 7, 2022 and December 12, 2022. (*Id.*, 60:5-70:4, Ex. 5.) On some of these calls, the caller left a voicemail, while on others they did not. (*Id.*)

**RESPONSE:**

Disputed. Plaintiff did not receive approximately 20 calls from callers calling on behalf of Foodsmart. QCS's call records establish that Plaintiff only received 9 such phone calls, which occurred on the following dates: December 17, 2021; February 9, 2022; May 17, 2022; June 4, 2022; June 7, 2022; June 9, 2022; January 3, 2023; January 4, 2023; and January 5, 2023. ECF 28-4 at 7. Plaintiff cannot dispute these records because (a) they line up perfectly with the Foodsmart voicemails he produced in discovery, and (b) his testimony contradict them because he admitted he doesn't remember every phone call he received. *Compare* ECF 28-3 at 19-20 *with* ECF 28-4 at 7.

6. On June 4, 2022, the caller from caller ID (715) 364-5026 left a voicemail soliciting Plaintiff to sign up for a telehealth visit and complete a nutritional assessment:

> Hi James, this is Cassandra. I'm calling on behalf of the Children's Community Health Plan and Foodsmart to let you know about a giveaway we are currently running as part of your CCHP membership. You could be entered to $100 by

> participating in the zero cost Telehealth visit and completing a nutritional assessment. Please call us back at 414-966-4599 as soon as possible so we can get you entered into the giveaway.

(Hulce Dep., Ex. 5.)

**RESPONSE:**

Undisputed, except to the extent Plaintiff intends the word "soliciting" to equate to a "telephone solicitation," and to the extent the automated transcript may contain inaccuracies.

7. Plaintiff received a call from that same caller ID on June 7, 2022 but the caller did not leave a voicemail. (Hulce Dep., Ex. 5.)

**RESPONSE:**

Undisputed.

8. During the summer months of 2022, beginning around June 2022, Plaintiff spoke with live callers at least five times, in some cases telling the caller he was not interested or was already receiving care from another registered dietician and in some cases requesting to be removed from their marketing lists or calling lists. (Hulce Dep., 73:12-74:13-75:7.)

**RESPONSE:**

Disputed. The call records definitively show that Plaintiff only received four calls during the summer of 2022 (on May 17, June 4, June 7, & June 9) and none of those calls resulted in a live connection whereby Plaintiff could have spoken to a live caller. Plaintiff cannot dispute these records because (a) they line up perfectly with the Foodsmart voicemails he produced in discovery, and (b) his testimony contradict them because he admitted he doesn't remember every phone call he received. *Compare* ECF 28-3 at 19-20 *with* ECF 28-4 at 7.

9. Plaintiff also received text messages from Foodsmart. On October 27, 2022, Plaintiff received the following text:

> October is the month of sweet treats & pumpkin spice everything. Make meeting with a personal dietitian part of your Fall routine & balance your blood sugar 🎃
>
> Bundle Up! Get a $25 gift card when you complete a no cost visit in Oct., and $25 for taking the Foodsmart Nutriquiz! https://fdsmt.co/3NdUw1V 🎃 Reply stop to unsubscribe.
>
> Unknown • Oct 27, 2022

(Hulce Dep., Ex. 4.)

**RESPONSE:**

Undisputed.

10. Plaintiff replied "STOP" but was still sent another text that stated: "You have been opted- out of receiving text messages from Foodsmart. Remember, you can still log in to set up a free consultation with a nutrition coach to help you eat healthier." (Hulce Dep., Ex. 4.)

**RESPONSE:**

Undisputed, except to the extent Plaintiff falsely implies there was something improper about an opt-out confirmation. 27 F.C.C Rec. 15391 ("sending a one-time text message confirming a consumer's request that no further text messages be sent does not violate the Telephone Consumer Protection Act."

11. Internally Foodsmart referred to such texts as "Text Marketing." (Scharen Dep., Ex. 13, p. 3.)

**RESPONSE:**

Undisputed, although Foodsmart did not always refer to texts as "marketing" and this fact is immaterial to the extent Plaintiff attempts to use it to support a legal conclusion about the

definition of "telephone solicitation," which has nothing to do with how laypersons refer to outreach materials internally.

12. Plaintiff sent CCHP a Formal Grievance Notice over the calls on November 10, 2022, informing CCHP that he was receiving "countless marketing communications regarding the Foodsmart Nutrition Program via phone calls, text messages, email and postal mail" despite requesting to be removed from Foodsmart marketing lists. (Hulce Dep., Ex. 6.)

**RESPONSE:**

Undisputed but immaterial, since CCHP didn't provide the letter to Foodsmart. Scharen Decl. at 107.

13. CCHP responded that "Chorus Community Health Plans completes the telephone and mailing portion of the marketing outreach, and Foodsmart completes the text and email portion." (Scharen Dep., Ex. 17).

**RESPONSE:**

Undisputed that Plaintiff has accurately quoted the letter he purports to have received from CCHP. However, this letter is unauthenticated and inadmissible. *Beales v. Plymouth*, 2010 WL 11601251, at *6 (E.D. Wis. Jan. 21, 2010), *aff'd sub nom. Beales v. City of Plymouth, Wis.*, 392 F. App'x 497 (7th Cir. 2010) ("To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence") (internal citation omitted)); *Scott v. Edinburg*, 346 F.3d 752, 759 (7th Cir. 2003) (stating that evidence relied upon to defeat a motion for summary judgment must be evidence of a type admissible at trial) (internal citation omitted).

6

14. CCHP further stated in its responsive letter: "Our Health Promotion Program Manager verified with Foodsmart that they updated their system to discontinue your texts and emails, however, there was a disconnection in your request being relayed to us. As a result, you continued to receive the telephone calls and letters by mail. The Health Promotion Program Manager also confirmed that a system is being put in place between our organizations to improve communications on member requests." (Scharen Dep., Ex. 17.) However, Foodsmart claims none of this is true. (*Id.*, 96:1-98:10; 102:4-104:13.)

**RESPONSE:**

Undisputed that Plaintiff has accurately quoted the letter he purports to have received from CCHP. However, this letter is unauthenticated and inadmissible. *Beales*, 2010 WL 11601251, at *6; *Scott*, 346 F.3d at 759. Foodsmart agrees that it never received this letter.

15. On January 3, 2023, the caller from caller ID (715) 364-5026 left the following voicemail:

> Hi, my name is Shirley. I'm calling on behalf of your health plan Chorus Community Health Plan and Foodsmart to let you know about an exciting promotion members who meet with the nutrition coach paid for it by your health plan will be entered to win a $100 Walmart gift card. This is on top of the guarantee $25 grocery gift card you can receive for completing your first appointment. Please call us back at 877-526-0894 as soon as possible so we can get you scheduled. I look forward to speaking to you soon. Have a good day.

(Hulce Dep., Ex. 5.)

**RESPONSE:**

Undisputed, except to the extent the automated transcript may contain inaccuracies.

16. On January 4, 2023, Plaintiff received a similar voicemail from the same caller ID:

> Hi James, this is Jessica. I'm calling on behalf of your health plan

7

> Chorus Community Health Plan and Foodsmart to let you know about an exciting promotion members who meet with the nutrition coach paid for by your health plan will be entered into $100 Walmart gift card. This is on top of the guaranteed $25 grocery gift card that you would receive for completing your first appointment. Please call us back as soon as possible so we can get your scheduled [appointments] are filling up fast, and I look forward to speaking to you soon. Have a great day.

(Hulce Dep., Ex. 5.)

**RESPONSE:**

Undisputed, except to the extent the automated transcript may contain inaccuracies.

17. The same caller ID called Plaintiff again the next day asking to speak with him. (Hulce Dep., Ex. 5.)

**RESPONSE:**

Undisputed.

18. CCHP had both "Commercial members" and "Medicaid members." For each type of member, Foodsmart followed the same process of billing CCHP for telenutrition visits separately and individually through claims. (Scharen Dep., Ex. 4.) "When someone meets with a dietician, a claim is submitted from Foodsmart that's sent to the health plan to reimburse Foodsmart for the services offered" and Foodsmart is compensated separately for each visit that a CCHP member would have with a dietician. (*Id.*, 36:12-37:13.)

**RESPONSE:**

Undisputed, except the "Commercial members" billing is irrelevant as Plaintiff received his health plan through his state funded Medicaid plan and the communications at issue in this case were regarding "Medicaid Members" billing consumers only. Hulce Deposition at 37; Scharen Dep. at 12, 54, 88-89.

19. Foodsmart both employs and enters into independent contractor relationships with

8

registered dieticians. (Scharen Dep., 39:1-11.)

**RESPONSE:**

Undisputed.

20. For Commercial members, Foodsmart also used Subscription Pricing whereby CCHP paid Foodsmart a fee per eligible member per month, irrespective of whether the consumer used the service. (Scharen Dep., Ex. 4, 34:14-34:22.)

**RESPONSE:**

Undisputed, except the "Commercial members" billing is irrelevant as Plaintiff received his health plan through his state funded Medicaid plan and the communications at issue in this case were regarding "Medicaid Members" billing consumers only. Hulce Deposition at 37; Scharen Dep. at 12, 54, 88-89.

21. For Medicaid members such as Plaintiff, Foodsmart also used Utilization Based Pricing, whereby CCHP paid Foodsmart a fee per enrolled user [a user who either signs up for the app or meets with a dietician] per year. (Scharen Dep., Ex. 4, 34:23-35:18.)

**RESPONSE:**

Undisputed.

22. The more users that enrolled with Foodsmart, the more revenue Foodsmart would earn from CCHP. (Scharen Dep., 35:19-36:16.)

**RESPONSE:**

Undisputed.

23. Foodsmart acknowledged that saying its service was free and saying the cost is hundreds of dollars but the consumer's insurer is 100% covering the cost of it were two ways of saying the same thing: "Your health plan is paying for this so it's free to you…." (Scharen Dep.,

9

Ex. 7, 60:15-61:1.)

**RESPONSE:**

Undisputed that Foodsmart's services were free to the individual CCHP consumers.

24. Foodsmart's services are also available to the general public. (Scharen Dep., 56:10-24.) Anyone can enroll and schedule telenutrition visits and pay for them out of pocket. (*Id.*)

**RESPONSE:**

Undisputed, except that Plaintiff was never and would never have been offered Foodsmart's services for any cost to him via the calls QCS made on behalf of CCHP. Those calls were only about the free services Foodsmart provides to CCHP Medicaid patients. ECF 28-4 at ¶ 6.

25. Plaintiff found Foodsmart's telemarketing particularly annoying and offensive because:

> I … was growing annoyed with the marketing and outreach related to the Foodsmart program. I had never before seen that kind of intense multimodal outreach from a health care provider, and I didn't really feel like that was appropriate for a health care setting. I had associated those kind of behaviors before with more high pressure sales, which is not really, in my mind, appropriate for a health care provider to do.

(Hulce Dep., 78:13-21.)

**RESPONSE:**

Undisputed that Plaintiff has accurately quoted his own testimony regarding how he claims to have felt about the phone calls he received from QCS about Foodsmart.

26. Roughly one third (20 out of 60) of the company's employees hold "marketing" positions, including Foodsmart's 30(b)(6) representative Jared Scharen - Senior Vice President of Marketing", Trevor Keating – "Director Growth Marketing", and Chad DeVos – "Product

10

Marketing Manager." (Scharen Dep., Ex. 2.)

**RESPONSE:**

Undisputed, but Foodsmart's internal designation of employees is irrelevant as to whether calls are "telephone solicitations" under the TCPA. 47 U.S.C. § 227(a)(4) (defining a telephone solicitation as "a telephone call or message [initiated] for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services . . . ."); 47 C.F.R. § 64.1200(c)(2) (stating that "[n]o person or entity shall initiate any telephone solicitation ***to: . . . [a] residential telephone subscriber*** who has registered his or her telephone number on the [DNC list] of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government") (emphasis added).

27. Foodsmart armed its callers with rebuttals to consumers who said they weren't interested. (Scharen Dep., Ex. 8, pp. 7-8.)

**RESPONSE:**

Undisputed that Foodsmart provided information about how QCS callers should respond to people who stated they were uninterested to help educate them about Foodsmart's products and services. Scharen Dep. at 82-83.

28. Foodsmart continued to call "cycled leads"—consumers that were called previously but dispositioned as not being interested. (Scharen Dep., Ex. 15.)

**RESPONSE:**

Disputed that Foodsmart called anyone. Scharen Dep. at 96-97. Undisputed that QCS called individuals who stated they were not interested on a prior occasion if those individuals didn't ask not to be called again, which makes sense because people can be not interested in a healthcare service at one time and become interested later as their availability and healthcare needs change.

Scharen Dep. at 82-83.

29. Foodsmart's Vice President of Marketing celebrated a successful campaign by calling it a "kick ass [ ] campaign." (Scharen Dep., Ex. 12.) He explained, "Do we also receive revenue from this so we can pay our dieticians and keep our lights on and continue expanding what we do? Yeah, we're a business." (*Id.*, 75:19-22.)

**RESPONSE:**

Undisputed, except his full explanation of the quotation is as follows:

> The reason that -- the reason behind the excitement is two things. Number one, the back to school portion of this that we know children are part of Chorus Community Health Plan, and we had a difficult time of engaging them and their families before because they're busy. So we -- there was excitement around we were able to -- given a lot of those folks are struggling with all the same issues we talked about before in addition to childhood obesity and other common ailments, that CCHP asked us to help out with. It was the success of that and being able to engage those individuals, but at the end of the day, right, we -- the company exists to help as many people as possible with food insecurity and with these ailments here.
>
> So I don't -- if I was a diehard capitalist, I would go work for a frickin' bank and go do that or some other job, right. I'm excited because these are 400 people who I know need help. Do we also receive revenue from this so we can pay our dietitians and keep our lights on and continue expanding what we do? Yeah, we're a business.

Scharen Dep. At 74-75.

30. Foodsmart admits it made no effort to scrub its calling lists for campaigns to CCHP members for phone numbers on the National Do Not Call Registry. (Scharen Dep., 106:6.)

**RESPONSE:**

Disputed. Foodsmart scrubs certain campaigns but didn't scrub CCHP campaigns geared at CCHP subscribers (like Plaintiff) receiving free services through their healthcare plans. Scharen Dep. at 106.

12

Dated: January 19, 2024.

Respectfully submitted,

/s/ Ryan D. Watstein
Ryan D. Watstein
James M. Ruley
WATSTEIN TEREPKA LLP
1055 Howell Mill Rd. 8th Floor
Atlanta, Georgia 30318
Tel: (404) 782-0695
E-mail: ryan@wtlaw.com
E-mail: jruley@wtlaw.com

Maria DelPizzo Sanders
State Bar No. 1031037
von Briesen & Roper, s.c.
411 East Wisconsin Avenue, Suite 1000
Milwaukee, WI 53202
Telephone: 414.221.6652
E-mail: maria.sanders@vonbriesen.com

*Attorneys for Defendant Zipongo, Inc. d/b/a Foodsmart*

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2024, I electronically filed the foregoing document in the United States District Court for the Eastern District of Wisconsin, with notice of same being electronically served by the CM/ECF system, to all attorneys of record.

/s/ Ryan D. Watstein
Ryan D. Watstein