# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JAMES HULCE, on behalf of himself
and all others similarly situated,**
       **Plaintiff,**

   v.                                                                                Case No. 23-C-0159

**ZIPONGO, INC. d/b/a FOODSMART,**
       **Defendant.**

_____

## DECISION AND ORDER

      Plaintiff James Hulce alleges that defendant Zipongo, Inc., which does business under the name Foodsmart, violated the Telephone Consumer Protection Act ("TCPA") by calling and text-messaging him at a number listed on the National Do-Not-Call Registry. The calls and messages urged plaintiff to sign up for Foodsmart's nutrition counseling services, which were available to him for free under his health plan. Before me now is Foodsmart's motion for summary judgment, which focuses primarily on the question of whether Foodsmart's calls and messages were "telephone solicitations" within the meaning of the TCPA. Also before me is plaintiff's motion to restrict access to certain documents that defendant has designated as confidential pursuant to a protective order.

## I. BACKGROUND

      Foodsmart is a for-profit company that provides nutritional counseling and related services to individuals. The services aim to improve the individual's diet and address food insecurity. To reach individuals, Foodsmart contracts with health plans and provides services to plan members at no cost to them. Foodsmart has cited studies showing that

its nutritional services help plans control costs by reducing claims for conditions related to unhealthy eating. (Declaration of Jared Scharen ¶¶ 9–10, ECF No. 28-2.)

During the time relevant to this suit, plaintiff Hulce received health services through BadgerCare Plus, a health service funded by the State of Wisconsin and Medicaid. To qualify for this service, an individual must either be low-income of have a disability. While he was enrolled in BadgerCare, plaintiff received health insurance through Chorus Community Health Plans ("CCHP"). CCHP, in turn, entered into a contract with Foodsmart to provide nutritional services to its members. The services included "telenutrition" visits with registered dieticians and access to an app-based platform that assisted members with things such as meal planning, finding healthy and affordable recipes, and enrolling in government food-subsidy programs. (Foodsmart Service Order at 1, ECF No. 32-7.)

CCHP and Foodsmart agreed that Foodsmart would provide its services to CCHP members at no cost to them—that is, without payment of any fee, copay, or coinsurance. Foodsmart, however, would receive compensation from CCHP in several ways. First, Foodsmart would bill CCHP for telenutrition visits by submitting a claim for payment after a registered dietician met with a plan member. (*Id.*) Second, CCHP paid Foodsmart monthly fees that were calculated differently depending on whether the member was receiving benefits through Medicaid or commercial insurance. For commercial members, CCHP paid Foodsmart a monthly fee per eligible member per month, whether or not the member utilized Foodsmart's services. (*Id.* at 1; Dep. of Jared Scharen at 34:14–34:22.) For Medicaid members, CCHP paid Foodsmart a fee per user per year. For Foodsmart to receive a fee based on the plan member's usage, the plan member had to either use the app or meet with a dietician. (Scharen Dep. at 34:23–35:18.) Finally, CCHP agreed

2

to pay Foodsmart performance bonuses for each member who improved their nutritional habits by a certain percentage or lost a certain percentage of bodyweight. (Foodsmart Service Order at 2.)

Foodsmart promoted its services to CCHP's members by, among other methods, calling them and sending them text messages. Plaintiff was the target of some of these calls and messages. He contends that, between 2021 and 2022, he received approximately 20 calls and text messages from Foodsmart's representative, Quality Contact Services ("QCS"). The communications generally encouraged plaintiff to enroll in the Foodsmart services available to him for free as a CCHP member. For example, QCS left him a message that his voicemail software transcribed as follows:

> Hi James, this is Cassandra. I'm calling on behalf of the Children's Community Health Plan and Foodsmart to let you know about a giveaway we are currently running as part of your CCHP membership. You could be entered to $100 [sic] by participating in the zero cost Telehealth visit and completing a nutritional assessment. Please call us back at 414-966-4599 as soon as possible so we can get you entered into the giveaway.

(ECF 32-22 at 2.) An exemplar text message stated:

> October is the month of sweet treats & pumpkin spice everything. Make meeting with a personal dietitian part of your Fall routine & balance your blood sugar🍂
>
> Bundle Up! Get a $25 gift card when you complete a no cost visit in Oct. and $25 for taking the Foodsmart Nutriquiz!🎃

(ECF No. 32-21 at 1.)

In the present suit, plaintiff alleges that the calls and messages QCS initiated on behalf of Foodsmart violated an FCC regulation implementing the TCPA because, at the time he received the calls and messages, his number appeared on the National Do-Not-Call Registry. *See* 47 C.F.R. § 64.1200(c)(2). Plaintiff also alleges that Foodsmart

3

Case 2:23-cv-00159-LA   Filed 03/18/24   Page 3 of 13   Document 38

violated the TCPA by continuing to initiate calls and messages to him after he expressly asked QCS to stop contacting him.

Foodsmart has moved for summary judgment. It primarily contends that QCS's calls and messages did not violate the TCPA's do-not-call regulation because that regulation applies only to "telephone solicitations" as defined in the TCPA. *Id.* Here, Foodsmart contends that the calls and messages were not telephone solicitations because their purpose was not to sell plaintiff anything but to notify him about a free service available through his health plan. Relatedly, Foodsmart contends that interpreting the term "telephone solicitation" to apply to the calls and messages at issue would pose a First Amendment problem that should be avoided. In alternative arguments, Foodsmart contends that (1) it is not vicariously liable for any TCPA violations committed by QCS, and (2) QCS qualifies for a safe-harbor provision in the FCC regulation that applies when a caller maintains procedures designed to avoid making calls to numbers on the Do-Not-Call Registry.

Below, I discuss Foodsmart's primary argument about the term "telephone solicitations." Because that argument is dispositive, I do not discuss Foodsmart's related First Amendment argument or its alternative arguments about vicarious liability and safe harbor. I also address plaintiff's motion to restrict access to documents that defendant has designated as confidential pursuant to a protective order.

## II. DISCUSSION

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I view the evidence in the light

most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

The FCC has promulgated a regulation under the TCPA providing that "[n]o person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations." 47 C.F.R. § 64.1200(c)(2). In relevant part, both the TCPA and the FCC regulation define "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15).

Foodsmart contends that because its calls and messages were for the purpose of providing plaintiff with information about a free service available to him through his health plan, they were not initiated for the purpose of encouraging the purchase of any property, good, or service. Plaintiff does not dispute that the Foodsmart services being promoted in the calls and messages would have been free to him. However, he contends that because his health insurer would have paid for the services had he accepted them, the calls and messages were initiated for the purpose of "encouraging the purchase" of Foodsmart's services.

The parties' arguments present a question of statutory interpretation. To answer it, I must begin with the statue's text. *Bartenwerfer v. Buckley*, 598 U.S. 69, 74 (2023). The key words in the text are "encouraging" and "purchase." In the context of the statute, the verb "encouraging" means "to attempt to persuade" or "urge." Merriam-Webster Online Dictionary (last viewed March 18, 2024). "Purchase," in turn, is used as a noun to mean

5

"an act or instance of purchasing." *Id.* And the verb "purchasing," in this context, means "to obtain by paying money or its equivalent." *Id.* Putting these terms together, the purpose of the call or message must be to urge someone to pay money or its equivalent for a good or service.

In the present case, there is no doubt that the purpose of the calls and messages to plaintiff was to urge him to utilize Foodsmart's nutritional services. Foodsmart contends that the communications were merely "informational" because they only informed plaintiff about a free service. (Br. in Supp. at 2.) However, the communications did not merely tell plaintiff that the services existed. They urged him to sign up for them and offered him rewards for doing so, such as gift cards and the chance to win $100.

Although the purpose of the communications was to encourage plaintiff to utilize Foodsmart's services, it does not follow that their purpose was to encourage him to *purchase* Foodsmart's services. Indeed, plaintiff concedes that the purpose of the calls was not to encourage him to purchase Foodsmart's services, since the services were available to him for free.[1] Instead, he contends that, had he agreed to sign up for Foodsmart's services, CCHP would have purchased those services on his behalf by paying the various types of compensation available under its contract with Foodsmart. (Br. in Opp. at 1, 13.) Plaintiff argues that, because the definition of "telephone

---

[1] Plaintiff does not argue that, in a transaction for a service covered by health insurance, the insured "purchases" the service at issue from the provider and is later reimbursed by the insurer if the insurer approves the claim. Instead, he points to the insurer as the only potential purchaser. *See* Br. in Opp. at 13 (arguing that "CCHP directly purchases [services] from Foodsmart for CCHP's members such as Plaintiff on their behalf"). Thus, I do not address whether, in a transaction for a service covered by health insurance, the insured could be considered a purchaser for purposes of the TCPA.

6

solicitations" does not specify who must make the purchase, the communications to him qualify as such solicitations even though he was not encouraged to purchase anything. However, while it is true that the statute does not specifically state that the purpose of the communication must be to encourage *the recipient* to make a purchase, the statute still requires the communication's purpose to be to encourage *someone* to make a purchase. That is so because the ordinary understanding of the phrase "encouraging the purchase" implies that some subject is being encouraged to make a purchase.

In the present case, the evidence establishes that the purpose of the communications was not to encourage anyone to purchase Foodsmart's services. Although plaintiff was encouraged to *utilize* Foodsmart's services, he was not encouraged to *purchase* them because, to utilize them, he did not need to pay money or its equivalent. The only other potential purchaser was CCHP. While CCHP's paying Foodsmart to provide services to its members might reasonably be characterized as a "purchase" of those services on behalf of its members, the purpose of the communications could not have been to *encourage* CCHP to make that purchase. At the time of the communications, CCHP had already agreed to pay Foodsmart for any services provided to its members, so CCHP needed no further encouragement to do so. Moreover, the communications were not targeted at CCHP in any way. The calls did not, for example, ask plaintiff to encourage CCHP to add Foodsmart's services to his health plan. Thus, the communications did not encourage anyone to make a purchase.

Plaintiff contends that, because he was encouraged to do something that would have caused CCHP to make a purchase, the purpose of the communications was to encourage CCHP's purchase. But this interpretation distorts the ordinary understanding

of the statute's text by separating the encouragement element from the purchasing element. As explained above, the text implies that the purpose of the communication must be to encourage someone to make a purchase. This further implies that the encouragement must be designed to affect the ultimate purchaser's decision-making. Under plaintiff's interpretation, however, the encouragement need not have any effect on the purchaser at all. It is enough if the communication encourages some act that, through a preexisting chain of causation, will cause a third party to pay money for goods or services. Because that is not a reasonable understanding of the phrase "encouraging the purchase," I conclude that Foodsmart's communications were not "telephone solicitations."

In addition to the statute's text, the existing caselaw supports the conclusion that the communications were not telephone solicitations. A case entirely on point is *Trujillo v. Free Energy Savings Co.*, No. 5:19-cv-02072, 2020 WL 7768722 (C.D. Cal. Dec. 21, 2020). The defendant in that case sent text messages notifying the recipient that he or she might qualify for free weatherization services. Had the recipient signed up for the services, the defendant would have performed them and received payment from the utility companies that supplied gas and electricity to the recipient. Such text messages mirror the calls and text messages sent on behalf of Foodsmart, in that the recipient would have received the services for free but a third party would have paid for them pursuant to a preexisting contract. The only differences between the communications in *Trujillo* and those in this case are that the services involved weatherization rather than nutritional advice, and the payor was a utility company instead of a health insurer. In *Trujillo*, the court concluded that because the communications did not encourage anyone to make a

Case 2:23-cv-00159-LA   Filed 03/18/24   Page 8 of 13   Document 38

purchase (either the recipient or the utility companies and its agents), they were not "telephone solicitations." *Id.* at *3. Accordingly, *Trujillo* supports the result in this case.

Other cases, while perhaps not as analogous to this case as *Trujillo*, make the point that unless the purpose of the communication is to encourage someone to make a purchase, it is not a telephone solicitation. *See Horton v. Tarrant Cnty. Hosp. Dist.*, No. 4:22-CV-9-P, 2022 WL 702536 (N.D. Tex. Feb. 4, 2022) (messages advising recipient about availability of free vaccines did not encourage any purchase); *Schulz v. Infogroup, Inc.*, No. 3:19-CV-1620-N, 2020 WL 4201636 (N.D. Tex. July 21, 2020) (communications arguably offering recipient a free product not telephone solicitations); *Spiegel v. Reynolds*, No. 15 C 8504, 2017 WL 4535951, at *4 (N.D. Ill. Oct. 11, 2017) (communications soliciting donations not telephone solicitations even though donations would be used to make purchases); *Morris v. UnitedHealthcare Ins. Co.*, No. 4:15-CV-00638, 2016 WL 7115973, at *8–9 (E.D. Tex. Nov. 9, 2016) (calls advising recipient of availability of free insurance benefit not telephone solicitations); *Murphy v. DCI Biologicals Orlando, LLC*, No. 6:12–cv–1459, 2013 WL 6865772, at *10 (M.D. Fla. 2013) (communications in which sender offered to purchase recipient's plasma not telephone solicitations).

The cases cited by plaintiff, in contrast, do not support his argument that a communication can be for the purpose of encouraging a purchase even if it does not encourage anyone to purchase anything. Three of his cases involved communications in which the recipient of the call was encouraged to make a purchase. *See Whittaker v. Freeway Ins. Servs. Am. LLC*, N. CV-22-8042, 2023 U.S. Dist. LEXIS 6018, at *5–6 (D. Ariz. Jan 12, 2023) (purpose of communications was to encourage plaintiff to purchase insurance); *Mantha v. Quotewizard.com, LLC*, No. 19-12235-LTS1, 2021 U.S. Dist.

9

LEXIS 245059, at *20 (D. Mass. Dec. 3, 2021) (purpose of communications was to encourage plaintiff to purchase insurance from third-party insurers); *Chinitz v. NRT West, Inc.*, No. 18-cv-06100, 2019 U.S. Dist. LEXIS 27134, at *6–7 (N.D. Cal. Feb. 20, 2019) (purpose of communications was to encourage recipient to purchase brokerage services). And one case involved a phone message that the court interpreted as promoting a motion-picture release, meaning that the purpose of the call was to encourage the recipient to purchase tickets to the film. *Golan v. Veritas Entertainment, LLC*, 788 F.3d 814, 820–21 (8th Cir. 2015). In none of these cases was the recipient encouraged to take some action that would have caused a third party to make a purchase under a pretexting contract.

Plaintiff's remaining case, *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 80 F.4th 466 (4th Cir. 2023), does not interpret the TCPA's definition of "telephone solicitation." Instead, it interprets the TCPA's separate definition of "unsolicited advertisement," 47 U.S.C. § 227(a)(5), which does not apply to the do-not-call violations alleged in the present case. Instead, it applies to the TCPA's prohibition on sending junk faxes. 47 U.S.C. § 227(b)(1)(C). Plaintiff contends that the definition of "unsolicited advertisement" should inform the meaning of "telephone solicitations." However, the two definitions use entirely different terms. While a telephone solicitation must encourage the purchase of a good or service, an unsolicited advertisement need only "advertise the commercial availability or quality of any property, good, or service." 47 U.S.C. § 227(a)(5). The latter definition does not require that the purpose of the fax be to encourage anyone to make a purchase. Of course, such advertising could be—and perhaps often will be—for the purpose of encouraging the recipient to purchase the product or service advertised. But the distinction between telephone solicitations and unsolicited

10

advertisements matters when, as in this case, the subject of the communication or advertisement is a good or service that is free to the recipient but will be paid for by a third party under a preexisting contract. In that scenario, a fax can be an unsolicited advertisement if it either informs the recipient that the good or service is commercially available or touts its qualities, even if the advertisement is not for the purpose of encouraging the recipient, the third party, or anyone else to purchase the good or service. Thus, in *Carlton & Harris*, the court found that a fax touting the sender's electronic version of the *Physician's Desk Reference* was an unsolicited advertisement even though the recipient would have received it for free. 80 F.4th at 475–77. Had the recipient accepted the eBook, the sender would have received commissions from the pharmaceutical companies whose drugs were listed in the book. *Id.* at 475. The prospect of such commissions satisfied the judicially imposed requirement that a junk fax have a "commercial character." *Id.* at 473. But, as explained, the definition of "telephone solicitation" requires more than just an opportunity for financial gain—it requires a purpose to encourage someone to make a purchase. Accordingly, *Carlton & Harris* does not support plaintiff's interpretation of "telephone solicitation."

In sum, because the calls and text messages at issue did not encourage the purchase of any good or service, they were not telephone solicitations sent in violation of the TCPA's do-not-call regulation. For this reason, I will grant defendant's motion for summary judgment.

Finally, I address plaintiff's motion to restrict the public's access to certain documents that he filed in support of his opposition to defendant's motion for summary judgment. Plaintiff reports that defendant designated the documents confidential under

11

the stipulated protective order that I approved during discovery. (ECF No. 17.) Plaintiff states in the motion that he takes no position on whether the documents should be restricted. (ECF No. 31 at 1.) Thus, under General Rule 79(d)(3) of this court's local rules, if defendant wished to preserve the documents' restricted status, it had to respond to plaintiff's motion to restrict and "provide sufficient facts demonstrating good cause to continue sealing the documents or materials." I highlighted this aspect of the court's local rules when I granted the motion for a protective order and warned the parties that if they did not comply, I would deny the motion to restrict. (ECF No. 18.) Defendant did not respond to plaintiff's motion to restrict access to the materials in question. Accordingly, because no good cause has been shown, I will deny the motion to restrict access and require the Clerk of Court to make those materials available for viewing on the public docket.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that defendants' motion for summary judgment (ECF No. 28) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion to restrict access (ECF No. 31) is **DENIED**. The Clerk of Court shall remove the restrictions on ECF Nos. 32-3, 32-5, 32-7, 32-9, 32-11, 32-13, 32-16 and 33-1.

**FINALLY, IT IS ORDERED** that the Clerk of Court shall enter final judgment.

Dated at Milwaukee, Wisconsin, this 18th day of March, 2024.

/s/ Lynn Adelman
LYNN ADELMAN
United States District Judge